IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| REV. FR. PRISCO E. ENTINES, ELEAZAR P. ANDOQUE, and OLYMPIA A. SAARENAS, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 96-740C (Judge Margolis) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that this Court dismiss the complaint filed by Rev. Fr. Prisco E. Entines, Eleazar P. Andoque, and Olympia A. Saarenas (collectively "plaintiffs"), as untimely.[1] In support of this motion, we rely upon the allegations contained within plaintiffs' complaint, the following memorandum of law, and the administrative record.[2]

---

[1] In the event this motion is denied, defendant respectfully requests that it be permitted to submit a response to plaintiffs' complaint within 30 days after issuance of the Court's order. If necessary, we anticipate filing a motion for summary judgment, pursuant to RCFC 56(b), based upon the grounds that, pursuant to applicable military pay statutes, plaintiffs are not entitled to additional benefits. At this point, however, we believe that submission of a motion for dismissal is appropriate, because plaintiffs' cannot, in the first instance, establish that the Court may exercise subject matter jurisdiction to entertain their claims. RCFC 12(b)(1).

[2] In considering the Government's motion to dismiss, the Court "may also consider certain materials outside the pleadings such as official documents, matters of general public record and historical publications." Atlas Corp. v. United States, 15 Cl. Ct. 681, 683 (1988), aff'd, 895 F.2d 745 (Fed. Cir.), cert. denied, 111 S.Ct. 46 (1990). See also Hohri v. United States, 586 F. Supp. 769, 773 (D.D.C. 1984), aff'd, 847 F.2d 779 (Fed. Cir.), cert. denied, 488 U.S. 925 (1988); RCFC 9(h)(3).

## DEFENDANT'S MEMORANDUM OF LAW

## STATEMENT OF THE ISSUE

Whether this Court lacks subject matter jurisdiction to entertain claims for military pay and benefits commenced 50 years after accrual. 28 U.S.C. § 2501.

## STATEMENT OF THE CASE

### I. Nature Of The Case

Plaintiffs, as either Filipino World War II veterans or their survivors, seek back pay and duty allowances, as well as veterans benefits, allegedly due members of the Philippine Commonwealth Army ("PCA") or recognized guerilla resistance sub-units. E.g., Plaintiffs' Complaint ("Compl."), dated November 21, 1996, at ¶¶ 12, 18, 22. With regard to their back pay claims -- Counts I through III of the complaint -- plaintiffs contend that the United States Congress failed to implement, by fiscal appropriations legislation, certain recommendations by senior War Department officials and executive orders issued by the Philippine government to raise the pay of PCA soldiers to equal that of United States Army personnel. Compl. at 10-11. Moreover, plaintiffs allege that passage of section 107, of title 10, United States Code, which generally excludes service in the Philippine armed forces in calculating U.S. veterans benefits, caused "the taking of [their] private property for public use . . .[by] denying full veterans' benefits" to Filipino soldiers. Id. ¶ 27.

Alternatively, should the Court determine that plaintiffs

are not entitled to judgment in their favor under either the applicable military pay statutes or the "just compensation" clause of the Constitution, plaintiffs contend entitlement to benefits based upon an "express or implied-in-fact contract" between the United States and all Filipino military personnel during World War II. Compl. ¶¶ 29-37.

STATEMENT OF FACTS[3]

A. Enrique Entines

Private Enrique Entines ("Pvt. Entines") served with the Philippine Commonwealth Army guerilla forces from his induction on November 4, 1944 until his death on March 25, 1945. AR 20-22.[4] On or about April 2, 1946, Crestina Espano Esperanzate, Pvt. Entines' widow, submitted a claim to the United States Army Forces ("Army"), Western Pacific headquarters, seeking "pay and quarters allowances" that were due Pvt. Entines at death. AR 2. The Army, on March 26, 1949, issued a "decree of final distribution," awarding Ms. Esperanzate, as well as her seven children, 118.04 Philippine pesos. AR. 11. Both on August 20, 1948 and November 10, 1950, Ms. Esperanzante's claims for U.S. veterans benefits were denied. AR 38. A final claim for

---

3/ Plaintiffs' complaint lacks any allegations regarding the individual service of the Messrs. Entines, Andoque, and Saarenas. Concurrent with this motion, defendant has provided copies of Enrique Entines', Eleazar Andoque's, and Renato Saarenas', personnel records from the U.S. Army Reserve Personnel Center, Philippine Army Branch.

4/ "AR" refers to the administrative record, submitted concurrently with this motion.

veterans benefits was denied by the Philippine Veterans Administration on November 21, 1972. AR 39.

B. Eleazar Andoque

From December 1941 to August 1945, Eleazar Andoque served initially with the Philippine Commonwealth Army and later with recognized guerilla forces. AR 41-45. During 1945, Lt. Andoque received accelerated salary and benefits payments pursuant to the Missing Persons Act, 37 U.S.C § 5561, as compensation for military service in a guerilla unit during the Japanese occupation of the Philippines. AR 41. On March 6, 1946, however, the U.S. Army, Recovered Personnel Division, requested collection of an overpayment of 1,571.87 Philippine pesos made to Lt. Andoque. AR 48. In calculating the amount due, the Army noted that Lt. Andoque had previously received "guerilla currency," the value of which had not subtracted from payments previously issued. AR 48. There is no indication in Lt. Andoque's personnel records either that the debt was satisfied or that the Army repeated its request for repayment.

C. Renato Saarenas

From November 1, 1942 to September 28, 1945, Renato Saarenas served as a corporal with the Philippine Army guerilla forces. AR 110. On or about July 29, 1947, Corporal Saarenas was awarded 801.05 Philippine pesos as back pay and allowances due for his World War II guerilla services. AR 126-27.

## ARGUMENT

### Plaintiffs' Claims Are Barred By The Applicable Statute of Limitations

1. Actions seeking back pay, allowances, or other military benefits must be filed within six years after accrual of the underlying claims. 28 U.S.C. § 2501; Sanders v. United States, 34 Fed. Cl. 75, 80 (1995)(discussing 28 U.S.C. § 2501 in context of military pay cases), aff'd, 104 F.3d 376 (Fed. Cir. 1996)(Table). Section 2501, of title 28, United States Code, provides that

> [e]very claim upon which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim accrues.

28 U.S.C. § 2501. As the United States Court of Appeals for the Federal Circuit explained in Hopland Band of Pomo Indians v. United States, 855 F.2d 1573 (Fed. Cir. 1988):

> [T]he 6-year statute of limitations on actions against the United States is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed. See Spannaus v. Department of Justice, 824 F.2d 52, 55 (D.C. Cir. 1987) (discussing 28 U.S.C. § 2401(a)); Jones v. United States, 801 F.2d 1334, 1335 (Fed. Cir. 1986) (the statute of limitations set forth in section 2501 is jurisdictional), cert. denied, 107 S. Ct. 1887 (1987). Exceptions to the limitations and conditions upon which the government consents to be sued are not to be implied. Soriano v. United States, 352 U.S. 270, 276 (1957) . . . .

Id. at 1577. In this regard, a "claim first accrues and the six year statute of limitations begins to run . . . 'when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action.'" Hart v.

United States, 910 F.2d at 817 (quoting Kinsey v. United States, 852 F.2d 556, 557 (Fed. Cir. 1988)); see also Oceanic S.S. Co. v. United States, 165 Ct. Cl. 217, 225 (1964)(claim accrues "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action"). With respect to claims based upon military service,

> [t]he statute of limitations . . . is generally six years, 28 U.S.C. § 2501, and "is jurisdictional in nature and, as an express limitation on the waiver of sovereign immunity may not be waived." The time for filing suit is tolled for service members, while they remain on active duty. Thus, a claim alleging back pay first accrues when the member is discharged or separated from active duty status.

34 Fed. Cl. at 80 (citing, among other authorities, Hart v. United States, 910 F.2d 815, 818-19 (Fed. Cir. 1990))(emphasis added).

Thus, even assuming for the sake of argument, that Filipino veterans were entitled to the differential between the salaries paid United States Army and Commonwealth Army soldiers during World War II, Pvt. Entines' claim accrued, at the latest, on March 25, 1945, AR 20-22, Lt. Andoque's in August 1945, AR 41-45, and Corporal Saarenas' on September 29, 1945, AR 119. In each instance, accrual occurred 51 years before submission of the complaint. As a result, because these back pay claims were not submitted until 45 years after expiration of the statute of limitations, Counts I through III should be dismissed.

B. Similarly, plaintiffs' takings claim, based upon the provisions of the First Supplement Surplus Appropriations Act, Pub. L. No. 79-301, 60 Stat. 14, codified at 38 U.S.C. § 107, is

decades late.[5] That act was promulgated on, as even plaintiffs concede, February 18, 1946, five decades before commencement of this litigation. Takings claims, like military pay actions, must be initiated within six years after accrual. E.g., Cuban Truck & Equipment Co. v. United States, 166 Ct. Cl. 381, 388-90, 333 F.2d 873 (1964), cert. denied 382 U.S. 844 (1965); L.E. Cooke Corp. v. United States, 27 Fed. Cl. 753, 754 (1993). In this case, plaintiffs' taking claims accrued on February 18, 1946, the date upon which section 107, pursuant to which plaintiffs' claim the Government deprived "Filipino soldiers and veterans . . . of private property -- in the form of their legitimate entitlement to veterans benefits," was enacted. Compl. ¶ 28; cf. United States v. Winstar Corporation, ___ U.S. ___ , ___, 116 S. Ct. 2432, 2452 (1996) (passage of statute triggers Government liability). Because plaintiffs failed to initiate this action within six years following enactment of section 107, their

---

5/ Section 107 provides, in pertinent part, that

> (a) Service before July 1, 1946, in the organized military forces of the Government of the Commonwealth of the Philippines, while such forces were in the service of the Armed Forces of the United States pursuant to the military order of the President, dated July 26, 1941 . . . shall not be deemed to have been active military, naval, or air service for the purposes of any law of the United States conferring rights, privileges, or benefit upon any person by reason of the service of such person or the service of any other person in the Armed Forces, except for [listed exceptions] . . . .

38 U.S.C. § 107(a).

takings claims, contained within Count IV of the complaint, are untimely and consequently should be dismissed.

3. Finally, plaintiffs' "alternative count," alleging that an "express, or implied-in-fact contract" existed between the United States and "the Filipino WWII soldier and veteran," Compl. ¶ 31 (emphasis deleted), and that the Government "blatantly breach[ed] the terms [of this contract] by continuing to deny these soldiers the prevailing wages of the United States Armed Forces," Compl. ¶ 35, is likewise barred by section 2501. Contract claims accrue upon the Government's breach, which, in this case, could not have occurred later than release from military service, i.e., the conclusion of the alleged contract performance. Nager Electric Co. v. United States, 177 Ct. Cl. 234, 240, 368 F.2d 847 (1966); Benjamin v. United States, 172 Ct. Cl. 118, 130-31, 348 F.2d 502 (1965). As noted above, even if plaintiffs correctly conclude that express or implied-in-fact contracts existed between Filipino military personnel and the United States, by the terms of those agreements, service, or performance, concluded shortly after the cessation of World War II. To have been timely, plaintiffs could, and should, have sought redress within six years after performance of their "express or implied-in-fact contract." They did not, and, as a result of that inaction, plaintiffs' "alternative count" must also be dismissed.[6]

[6] Nor can plaintiffs allege that the jurisdictional limitations contained within section 2501 should be tolled. Both

## CONCLUSION

For the reasons stated above, defendant respectfully requests that the Court dismiss plaintiffs' complaint.

Respectfully submitted,

FRANK W. HUNGER
Assistant Attorney General

DAVID M. COHEN
Director

---

the statute and executive orders upon which plaintiffs' claims are based were publicly available following promulgation, and the disparity in pay between American and Filipino soldiers during World War II was, as plaintiffs must concede, well-known. As this Court's predecessor explained:

> In certain instances the running of the statute of limitations will be suspended when an accrual date has been ascertained, but plaintiff does not know of his claim. Ignorance of rights which should be known is not enough. Plaintiff must either show that defendant has concealed its acts with the result that plaintiff was unaware of its existence or it must show that its injury was "inherently unknowable" at the accrual date.

Japanese War Notes Claimants Association of the Philippines, Inc. v. United States, 178 Ct. Cl. 630, 634, 373 F.2d 356, cert. denied, 389 U.S. 971 (1967). Here, plaintiffs do not allege, nor can they, either that the Army concealed any pay differentials for the past five decades or that their claims were somehow "inherently unknowable."

John K. Lapiana
**JOHN K. LAPIANA**
**Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**1100 L Street, N.W.**
**Washington, D.C. 20530**
**Tele: (202) 616-0317**

**Attorneys for Defendant**

**April 29, 1997**

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on April ~~25~~ 30th, 1997, I caused to be served by first-class mail, postage pre-paid copies of "DEFENDANT'S MOTION TO DISMISS," addressed as follows:

Emeterio G. Roa, III
Ordoveza Law Offices
2045 North 15th Street, Suite 102
Arlington, Virginia 22201

Anita M. Bell